UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Michael B.,[1]

        Plaintiff,

v.

Kilolo Kijakazi,
Acting Commissioner of Social Security,

        Defendant.

Court File No.  21-cv-1043 (NEB/LIB)

**REPORT & RECOMMENDATION**

---

Plaintiff, Michael B. (hereinafter "Plaintiff"), seeks judicial review of the decision of the Acting Commissioner of Social Security ("Defendant") denying his application for disability benefits.  This matter has been referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  This Court has jurisdiction over the claims pursuant to 42 U.S.C. § 405(g).

Both parties submitted cross-motions for summary judgment, and the Court took the matter under advisement on the parties' written submissions.  [Docket Nos. 22, 24].  For the reasons discussed herein, the undersigned recommends that Plaintiff's Motion for Summary Judgment, [Docket No. 22], be **GRANTED**, and that Defendant's Motion for Summary Judgment, [Docket No. 24], be **DENIED**.

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Order. Accordingly, where the Court refers to Plaintiff by his name only his first name and last initial are provided.

## I. Procedural History

On May 15, 2019, Plaintiff filed a Title II application for a period of disability and disability insurance benefits. (Tr. 10, 240-247).[2] Plaintiff also filed a Title II application for supplemental security income on May 15, 2019. (Tr. 10, 248-257). Plaintiff alleged that his disability began on March 15, 2019, and that his disability was caused by impairments of "epilepsy," "memory problems," "seizures," "hard to find right medications that work effectively," "dizziness," and "many medications side effects." (Tr. 10, 89). The Commissioner initially denied Plaintiff's present claims on August 9, 2019, and again, upon reconsideration, on November 14, 2019. (Tr. 156-161). On December 12, 2019, Plaintiff filed a written request for a hearing before an Administrative Law Judge. (Tr. 172-173).

Administrative Law Judge Christel Ambuehl (hereinafter "ALJ") conducted a hearing on August 25, 2020. (Tr. 10). Plaintiff testified at the hearing, along with an independent vocational expert, Thomas Audet. (Tr. 10). On September 16, 2020, the ALJ issued a decision denying Plaintiff's request for a period of disability and disability insurance benefits. (Tr. 10-24). The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 24).

Thereafter, Plaintiff sought review of the decision by the Appeals Council. (Tr. 1-6). Subsequently, on February 19, 2021, the Appeals Council denied Plaintiff's request for review. (Tr. 1-5). Accordingly, the ALJ's decision became the final decision of the Acting Commissioner. See 20 C.F.R. §§ 404.981, 416.1481.

---

[2] Throughout this Report and Recommendation, the Court refers to the Administrative Record, [Docket No. 17], by the abbreviation "Tr." The Administrative Record is consecutively paginated across 79 exhibits. (See Administrative Record [Docket No. 17]). Where the Court cites to the Administrative Record, it refers to the page numbers found in the bottom-right corner of these exhibits.

On April 23, 2021, Plaintiff filed the present action. (Compl., [Docket No. 1]). Thereafter, both parties submitted cross-motions for summary judgment, and the Court took the matter under advisement on the written submissions. [Docket Nos. 22, 24].

## II. Standards of Review

### A. Administrative Law Judge's Five-Step Analysis

If a claimant's initial application for disability benefits is denied, he may request reconsideration of the decision. 20 C.F.R. §§ 404.907–404.909. A claimant who is dissatisfied with the reconsidered decision may then obtain administrative review by an administrative law judge ("ALJ"). 42 U.S.C. § 405(b)(1); 20 C.F.R. § 404.929.

To determine the existence and extent of a claimant's disability, the ALJ must follow a five-step sequential analysis. This analysis requires the ALJ to make a series of factual findings regarding the claimant's impairments, residual functional capacity, age, education, and work experience. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992). The Eighth Circuit has described this five-step process as follows:

> The Commissioner of Social Security must evaluate: (1) whether the claimant is presently engaged in a substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir. 2003).

### B. Appeals Council Review

If the claimant is dissatisfied with the ALJ's decision, he may request review by the Appeals Council; however, the Appeals Council need not grant that request for review. See 20

3

C.F.R. §§ 404.967–404.982. The decision of the Appeals Council (or, if the request for review is denied by the Appeals Council, then the decision of the ALJ) is final and binding upon the claimant, unless the matter is appealed to federal court within sixty days after notice of the Appeals Council's action. See 42 U.S.C. § 405(g); 20 C.F.R. § 404.981. In this case, the Appeals Council declined to review the ALJ's decision finding that Plaintiff was not disabled. (Tr. 1-6).

**C. Judicial Review**

Judicial review of the administrative decision generally proceeds by considering the decision of the ALJ at each of the five steps. However, judicial review of the Commissioner's decision to deny disability benefits is constrained to a determination of whether the decision is supported by substantial evidence in the record, as a whole. 42 U.S.C. § 405(g); Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008); Tellez v. Barnhart, 403 F.3d 953, 956 (8th Cir. 2005); Buckner v. Apfel, 213 F.3d 1006, 1012 (8th Cir. 2000) ("We may reverse and remand findings of the Commissioner only when such findings are not supported by substantial evidence on the record as a whole."). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007); Buckner, 213 F.3d at 1012 (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)).

In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ. Hilkemeyer v. Barnhart, 380 F.3d 441, 445 (8th Cir. 2004). The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence. Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994). The Court should not reverse the

Commissioner's finding merely because evidence may exist in the administrative record to support the opposite conclusion. Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

After balancing the evidence, if it is possible to reach two inconsistent positions from the evidence and one of those positions represents the Commissioner's decision, the court must affirm the decision. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992). Thus, the court will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" Bradley, 528 F.3d at 1115. The decision of the ALJ "is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." Id. "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009) (quotation omitted).

The claimant bears the burden under the Social Security Act of proving that he is disabled. See 20 C.F.R. § 404.1512(a); Whitman v. Colvin, 762 F.3d 701, 705 (8th Cir. 2014). Once the claimant has demonstrated he cannot perform prior work due to a disability, the burden then shifts to the Commissioner to show that the claimant retains the residual functional capacity ("RFC") to engage in some other substantial, gainful activity. Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005).

**III. Decision Under Review**

Before beginning the five-step disability evaluation process, the ALJ first determined that Plaintiff met the insured status requirement of Social Security Act through December 31, 2024. (Tr. 12). This finding is not in dispute.

5

Thereafter, the ALJ made the following determinations during the five-step disability evaluation process.

At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since March 15, 2019. (Tr. 12). This finding is not in dispute. The Court will refer to the period of time between the date Plaintiff last engaged in substantial gainful activity and the date through which Plaintiff meets the insured status requirement of the Social Security Act as "the adjudicated period."

At step two, the ALJ concluded that Plaintiff had the following severe impairments: epilepsy (status post two partial lobectomies); neurocognitive disorder; and depression. (Tr. 13). These findings are not in dispute.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13). Specifically, the ALJ found that Plaintiff did not have any impairment or combination of impairments which met or medically equaled listings 11.00 and subparts, 12.00 and subparts, and more specifically listings 12.02 and 12.04. (Tr. 13). Plaintiff challenges the ALJ's findings at step three.

At step four, the ALJ made the following RFC determination:

> [T]he claimant has the residual functional capacity to perform a range of medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c). The claimant is able to lift and/or carry 50 pounds occasionally and 25 pounds frequently. The claimant should never climb ladders, ropes, or scaffolds. The claimant can occasionally climb ramps and stairs. The claimant should never use power tools or operate a motor vehicle as part of a job. The claimant is not able to work around hazards. The claimant is able to understand, remember, and carry out simple, repetitive instructions on a sustained basis. The claimant is able to interact with coworkers on a brief and superficial basis. The claimant should not have public interaction. The claimant's work should not require shared tasks or work, when shared, should be on a one-on-one basis. The claimant is able to tolerate ordinary supervision within the above limitations.

(Tr. 15). Plaintiff challenges this RFC determination made by the ALJ.

In making this RFC determination, the ALJ, considering the record, as a whole, found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms"; however, the ALJ also found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the ALJ's] decision." (Tr. 16). Plaintiff challenges this credibility finding by the ALJ.

Based on that RFC determination, the ALJ found that Plaintiff was unable to perform any past relevant work. (Tr. 22). Plaintiff does not challenge this finding.

Finally, at step five, the ALJ concluded that "[c]onsidering the [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform." (Tr. 25). Relying upon testimony from independent vocational expert, Thomas Audet ("IVE Audet"), the ALJ specifically found that, among the representative occupations, Plaintiff would be able to perform the requirements of linen room attendant (Dictionary of Occupational Titles No. 222.387-030) of which there are 30,000 positions in the national economy; and laundry laborer (Dictionary of Occupational Titles No. 361.687-018) of which there are 35,000 positions in the national economy. (Tr. 23). Other than an implicit challenge based on Plaintiff's other challenges, Plaintiff does not directly challenge the ALJ's findings at step five.

Accordingly, the ALJ found that Plaintiff was not under a disability, as that term is defined by the Social Security Act, at any time during the adjudicated period. (Tr. 24).

**IV. Analysis**

Plaintiff challenges the ALJ's decision on several grounds. This Court finds one of these arguments are sufficiently convincing to warrant remand: the ALJ did not adequately explain her finding that the opinions of Dr. Susanna Moseley, Ph.D., Sharon Lea Mason, M.A., L.P., and Dr. Gail Risse, Ph.D were each unpersuasive. (See Plf.'s Mem. [Docket No. 23] at pp. 9-17). Specifically, Plaintiff takes issue with the ALJ's evaluation of Dr. Moseley's August 6, 2020, medical opinion; Ms. Mason's August 10, 2020, medical opinion; and Dr. Risse's August 12, 2020, medical opinion. (Id.).

The relevant regulations governing the weighing of opinion evidence were revised for claims filed on or after March 27, 2017. See 20 C.F.R. § 404.1520c(a). Because Plaintiff filed his application for disability benefits on May 15, 2019, the new regulations apply here. See Id.

The new regulations eliminate the long-standing "treating physician" rule. Id.; see Kuikka v. Berryhill, No. 17-cv-374 (HB), 2018 WL 1342482, at *9 n.3 (D. Minn. Oct. 17, 2019) ("On March 27, 2017, the Social Security Administration rescinded the Treating Physician Rule with respect to social security disability appeals filed after the date of publication."). Under the new regulations, an ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Rather, the ALJ evaluates the persuasiveness of any medical opinion by considering the following five factors: (1)

8

supportability;[3] (2) consistency;[4] (3) relationship with the claimant; (4) specialization; and (5) other factors. 20 C.F.R. § 404.1520c(c).

The two most important factors are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). The ALJ must explain how these two factors were considered. Id. The ALJ may also, but is not required to, explain how the remaining factors were considered. Id. However, where the ALJ "find[s] that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ "will articulate how [she] considered the other" enumerated factors "for those medical opinions or prior administrative medical findings in [claimant's] determination or decision." 20 C.F.R. § 404.1520c(b)(3).

On August 6, 2020, Dr. Moseley, a neuropsychologist who had seen Plaintiff for neuropsychological testing at the Minnesota Epilepsy Group in August 2019, completed a Mental Medical Source Statement. (Tr. 793-796). In her August 6, 2020, Mental Medical Source Statement, Dr. Moseley checked the boxes indicating that she opined that Plaintiff had "marked" limitations in his ability to understand and remember simple and complex instructions and his ability to carry out complex instructions; and "moderate" limitations in his ability to carry out instructions and make judgments on simple and complex work-related decisions. (Tr. 793). When asked to identify the facts that support the above assessment, Dr. Moseley wrote "cognitive impairment related to neurological history (mild to severe impairments in verbal memory,

---

[3] "Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 1520c (c)(1).
[4] "Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 1520c (c)(2).

9

borderline impaired to moderately impaired language abilities) documented in neuropsychological evaluation report from 8/2019." (Tr. 793).

Dr. Moseley further opined that Plaintiff had between "moderate" and "marked" limitations in his ability to interact appropriately with the public, his supervisors, co-worker, and his ability to respond appropriately to usual work situations and to change in a routine work setting. (Tr. 794). When asked to identify the factors that support this assessment, Dr. Moseley wrote "impairments in language abilities on neuropsych testing from 8/2019 would certainly cause communication difficulty/impairment." (Tr. 794). When asked when the described limitations in the Mental Medical Source Statement were first present, Dr. Moseley wrote that Plaintiff's limitations were first found in "2013, likely prior based on [her] review of prior neuropsychological evaluation reports." (Tr. 794). Dr. Moseley further opined that Plaintiff could not manage benefits in his own interest. (Tr. 795).

On August 10, 2020, Ms. Mason, a psychologist who treated Plaintiff at the Minnesota Epilepsy Group between August 2019 and March 2020, partially completed a Mental Medical Source Statement. (Tr. 817-819). In her August 10, 2020, Mental Medical Source Statement, Ms. Mason checked the boxes indicating she opined that Plaintiff had "marked" limitations in his ability to understand and remember simple instructions, his ability to carry out simple and complex instructions, and his ability to understand and remember complex instructions. (Tr. 817). Ms. Mason based this opinion on Plaintiff's August 20, 2019, neuropsychological test results and her observations that Plaintiff had difficulty following commands during remote therapy sessions. (Tr. 817). Ms. Mason further indicated that her opinion was based on current limitations and "longstanding difficulties." (Tr. 818).

On August 12, 2020, Dr. Risse, a neuropsychologist who had met with Plaintiff in August 2019 to oversee his neuropsychological testing, completed a Psychiatric Review Technique form ("PRT"). (Tr. 798-812). In her August 12, 2020, PRT, Dr. Risse opined that Plaintiff met SSA Listing 11.02 for epilepsy and SSA Listing 12.02 for neurocognitive disorders. (Tr. 798). Dr. Risse provided that there was medical documentation of a significant cognitive decline from a prior level of function in the areas of learning and memory and language. (Tr. 799). Dr. Risse further opined that, in the areas of mental functioning or the Criteria B Listings, Plaintiff had "marked" limitations in his ability to understand, remember, or apply information and his ability to interact with others. (Tr. 810). Plaintiff also had "moderate" limitations in his ability to concentrate, persist, or maintain pace and in his ability to adapt or manage himself. (Tr. 810). Dr. Risse further opined that Plaintiff had medically documented history of neurocognitive disorders over a period of two years with evidence of both medical treatment, mental health therapy, or psychological support, and marginal adjustment. (Tr. 811).

Here, the ALJ collectively discussed the relevant portions of Dr. Moseley, Ms. Mason, and Dr. Risse's opinions, acknowledging each provider as Plaintiff's psychologists. (Tr. 21-22). The ALJ then found that, while there was evidence to support a finding of some level of mental limitation, their opinions collectively were unpersuasive because they were "inconsistent with the evidence which reflects reasonable mental stability over time as well as good[,] retained ability for independent everyday functioning." (Tr. 22). However, the ALJ did not give further explanation as required by social security regulations. (Id.); see 20 C.F.R. § 404.1520c ("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision").

11

As noted above, pursuant to the plain language of 20 C.F.R. § 404.1520c, the ALJ was required to explain only how the two most important factors, supportability and consistency, were considered.[5] 20 C.F.R. § 404.1520c.(b)(2). On the record now before the Court, the ALJ failed to do so with regards to the opinions of Dr. Moseley, Ms. Mason, and Dr. Risse.

When discussing their opinions, the ALJ did not cite to any contradictory evidence in the record nor did the ALJ explain elsewhere in her decision why she believed the evidence "reflect[ed] reasonable mental stability over time" or which evidence demonstrated that Plaintiff had a "good retained ability for independent everyday functioning." The Court acknowledges that an ALJ may properly discount the opinion of a treating provider that is conclusory or unsupported and contradicted by other evidence in the record. Rogers v. Chater, 118 F.3d 600, 602 (8th Cir. 1997); Ghant v. Bowen, 930 F.2d 633, 639 (8th Cir. 1991); Martise v. Astrue, 641 F.3d 909, 925 (8th Cir. 2011) ("An ALJ may justifiably discount a treating physician's opinion when that opinion is inconsistent with the physician's clinical treatment notes.") (quotation omitted); Grindley v. Kijakazi, 9 F.4th 622, 632 (8th Cir. 2021); Kraus v. Saul, 988 F.3d 1019, 1025 (8th Cir. 2021); see also Wildman v. Astrue, 596 F.3d 959, 967 (8th Cir. 2010) (alteration in original) (quoting Piepgras v. Chater, 76 F.3d 233, 236 (8th Cir. 1996)) ("Indeed, [a] treating physician's" or psychotherapist's "opinion deserves no greater respect than any other" medical "opinion when [it] consists of nothing more than vague, conclusory statements."). However, the ALJ's failure to address specific evidence renders this Court "unable to determine whether any such rejection is based on substantial evidence." Jones v. Chater, 65 F.3d 102, 104 (8th Cir. 1995). While the ALJ

---

[5] The ALJ was permitted, but not required, to explain how the remaining factors were considered, unless the ALJ were first to find that two or more opinions were both equally well-supported. 20 C.F.R. § 404.1520c.(b)(2)-(3). Because the ALJ did not find that any two opinions were equally well-supported, and the ALJ found Dr. Moseley, Ms. Mason, and Dr. Risse's opinions were inconsistent with the record as a whole, the ALJ was not required to articulate how the other factors were considered. 20 C.F.R. § 404.1520c(b)(2)–(3). Therefore, in the present case, the ALJ was required to explain only how the supportability and consistency factors were considered.

may have properly evaluated Dr. Moseley, Ms. Mason, and Dr. Risse's opinions and disregarded their limitations for proper reasons supported by the record as a whole, the ALJ did not include this discussion, leaving the Court to "speculate whether or why an ALJ rejected certain evidence," which this the Court cannot do. Jones, 65 F.3d at 104.

In sum, the ALJ failed to adequately explain why she found the limitations expressed in Dr. Moseley, Ms. Mason, and Dr. Risse's opinions, respectively, to be unpersuasive.

Accordingly, the ALJ's failure to explain how both the consistency and supportability factors were evaluated for Dr. Moseley, Ms. Mason, and Dr. Risse's opinions constitutes legal error that warrants remand. See Bonnett v. Kijakazi, 859 F. App'x 19, 20 (8th Cir. 2021) (finding remand required because "while the ALJ adequately evaluated the supportability of [the plaintiff's physician's] opinion, she did not address whether his opinion was consistent with the other evidence of record, as required by the applicable regulation."); Lucus v. Saul, 960 F.3d 1066, 1069-70 (8th Cir. 2020) (finding remand required where the ALJ discredited a physician's opinion without discussing factors contemplated in regulation; stating, "The failure to comply with SSA regulations is more than a drafting issue, it is legal error.");

In the interest of completeness, this Court will address another of the other arguments raised by Plaintiff, which this Court finds to be compelling. Plaintiff also argues that the ALJ erred in failing to consider whether Plaintiff met SSA Listing 11.02 and in finding that Plaintiff did not meet SSA Listing 12.02. (See Plf.'s Mem., [Docket No. 23], at pp. 17-19).

At step three of the five-step sequential analysis, the ALJ must consider "whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations . . . ." Dixon, 353 F.3d at 605. If the claimant has an impairment or combination of impairments that meets or medically equals one of the listed impairments, the claimant "must

be held disabled, and the case is over." Jones v. Barnhart, 335 F.3d 697, 699 (8th Cir. 2003); see, 20 C.F.R. § 404.1520(d).

In this case, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments. (Tr. 13). The ALJ generally listed two impairments in arriving at this conclusion: Listing 11.00 and subparts (neurological-adult), Listing 12.00 and subparts (mental disorders-adult), and more specifically, Listing 12.02 (neurocognitive disorders) and Listing 12.04 (depressive, bipolar and related disorders). (Tr. 13). Plaintiff contests the ALJ's conclusion at step three with respect to his epilepsy and neurocognitive disorder, arguing that the ALJ failed to consider whether Plaintiff met the requirements under Listing 11.02 and failed to address or reconcile Dr. Risse's inconsistent opinion that Plaintiff met Listings 11.02 and 12.02. (Plf.'s Mem., [Docket No. 23], at p. 18).

Turning to Listing 11.02, which Plaintiff asserts the ALJ failed to consider, this listing applies to epilepsy disorders, and provides four different circumstances in which the listing may be met, including where a claimant experiences less frequent seizures, but suffers a marked limitation in one of the following categories: physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself.[6] 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 11.02. While the ALJ did

---

[6] 11.02 Epilepsy, documented by a detailed description of a typical seizure and characterized by A, B, C, or D:
    A. Generalized tonic-clonic seizures, occurring at least once a month for at least 3 consecutive months despite adherence to prescribed treatment; or
    B. Dyscognitive seizures, occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment; or
    C. Generalized tonic-clonic seizures, occurring at least once every 2 months for at least 4 consecutive months despite adherence to prescribed treatment; and a marked limitation in one of the following:
        1. Physical functioning; or
        2. Understanding, remembering, or applying information; or
        3. Interacting with others; or
        4. Concentrating, persisting, or maintaining pace; or
        5. Adapting or managing oneself; or

14

not specifically address Listing 11.02, the ALJ considered Listing 11.00 generally concluding that Plaintiff's impairments, while considered severe, "[were] not attended, singly or in combination with any other impairment, with the specific clinical signs and diagnostic findings" required to meet SSA Listing 11.00 <u>and its subparts</u>. (Tr. 13) (emphasis added). Therefore, contrary to Plaintiff's assertion, the ALJ did consider, among other subparts, Listing 11.02.

This does not end this Court's analysis. In finding that Plaintiff did not meet Listings 11.00 and 12.00 generally, as well as, Listings 12.02 and 12.04, the ALJ provided that "no medical expert ha[d] opined that the claimant possesses an impairment that equals the severity of a listed impairment, alone or in combination." (Tr. 13). However, this is directly contradicted by the record. As noted above, Dr. Risse opined in the August 12, 2020, PRT that Plaintiff met SSA Listing 11.02 for epilepsy and SSA Listing 12.02 for neurocognitive disorders. (Tr. 798). While the Commissioner appears to argue that Dr. Risse's conclusory opinion "[was] never entitled to be deemed persuasive," the Commissioner's own regulations state that opinions from medical sources regarding whether a listing is met or equaled are "consider[ed]," even though the "final responsibility" for making this decision "is reserved to the Commissioner." 20 C.F.R. § 404.1527(e)(2). Here, there is no indication the ALJ complied with this regulation. See <u>Scott</u>, 529 F.3d at 822-23 (holding that remand was required when the record contained factual inconsistencies that the ALJ failed to resolve).

Therefore, the Court finds that based on the failings of the ALJ's decision, as discussed above, remand is appropriate.

---

D. Dyscognitive seizures, occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment; and a marked limitation in one [of the categories in C.1-C.5 above.]

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 11.02.

On remand, the ALJ should evaluate the opinions of Dr. Moseley, Ms. Mason, and Dr. Risse in accordance with 20 C.F.R. § 404.1520c. Further, the ALJ should also reconsider her analysis under Listings 11.00 and 12.00 and its subparts, as well as, Listing 12.02, and address Dr. Risse's opinion and provide clear reasons for accepting or rejecting her opinion that Plaintiff met Listings 11.02 and 12.02.

## V. Conclusion

Therefore, based on the foregoing, and on all of the files, records, and proceedings herein, IT **IS HEREBY RECOMMENDED THAT**:

1. Plaintiff's Motion for Summary Judgment, [Docket No. 22], be **GRANTED**;

2. Defendant's Motion for Summary Judgment, [Docket No. 24], be **DENIED**; and

3. The above matter be **REMANDED** to the Social Security Administration pursuant to sentence four of 42 U.S.C. § 405(g), for further administrative proceedings consistent with the opinion above.

Dated:  July 20, 2022

s/Leo I. Brisbois<br>
Hon. Leo I. Brisbois<br>
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).